IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1: 16 CR 320 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| JASAUN R. MATTICE, | ) | GOVERNMENT'S TRIAL BRIEF |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S TRIAL BRIEF

**I.** *Frye* **Inquiry**

Ordinarily, the United States would request that the Court inquire, before trial, whether defense counsel has communicated to Defendant and whether Defendant has rejected a pretrial plea offer made by the United States in accordance with *Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399 (2012). In *Frye*, the court considered an ineffective assistance of counsel claim by a defendant whose attorney did not communicate a plea offer to him. Frye was charged with a felony carrying a maximum term of four years imprisonment. *Id.* at 1404. The prosecutor in that case made an alternative plea offer of a felony with 10 days of "shock time" in prison or a misdemeanor with 90 days in prison. *Id.* Frye's attorney never communicated the plea offer to him, and it expired. Later, Frye pleaded guilty and was sentenced to three years in prison, far

longer than the plea offer. *Id.* at 1404-05. The court held that, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 1408.

In this case, the United States did not extend a formal plea offer because the Defendant has never demonstrated any desire to enter a guilty plea to any offense charged in the Indictment or any variation thereof. The United States respectfully requests that stand-by counsel for the Defendant be permitted to address, on the record, whether any plea discussions were ever had between counsel and the Defendant. Moreover, the United States respectfully requests that the Court address the penalties that the Defendant will face if convicted of the offenses set forth in the Indictment. A summary of the offenses and the potential penalties for the same are set forth below.

**II.   Overview of the Case**

    A.   <u>Charges set forth in the Indictment</u>

    Counts 1 – 12
    Bank Fraud, 18 U.S.C. 1344(1) and (2), and 2
    Dates: October 14, 2014 to November 17, 2014
    Maximum Punishment: 30 years imprisonment, $1 million fine, 5 years Post-Release Supervision

    Counts 13 – 24
    Possessing a Counterfeit Security, 18 U.S.C. 513(a)
    Dates: October 14, 2014 to November 17, 2014
    Maximum Punishment: 10 years imprisonment, $250,000 fine, 3 years Post Release Supervision

    Count 26 – 28
    Aggravated Identity Theft, 18 U.S.C. 1028(a)(1)
    Dates: October 24, 2014 to November 9, 2014
    Mandatory Punishment: 2 years imprisonment, consecutive to any underlying felony conviction

    Count 29
    Conspiracy to Commit Bank Fraud, 18 U.S.C. 1349
    Dates: September 10, 2016 to January 24, 2017
    Maximum Punishment: 30 years imprisonment, $1 million fine, 5 years Post-Release Supervision

    Counts 30 – 39
    Bank Fraud, 18 U.S.C. 1344(1) and (2), and 2
    Dates: September 10, 2016 to January 24, 2017
    Maximum Punishment: 30 years imprisonment, $1 million fine, 5 years Post-Release Supervision

    Counts 40 – 44
    Possessing a Counterfeit Security, 18 U.S.C. 513(a)
    Dates: October 27, 2016 to October 28, 2016
    Maximum Punishment: 10 years imprisonment, $250,000 fine, 3 years Post Release Supervision

    B.    <u>Government's Statement of the Facts and Proffered Preliminary Statement</u>

Briefly summarized, Defendant Jasaun R. Mattice is charged with engaging in a scheme and artifice to defraud and to obtain money and property from federally insured financial institutions during two separate time periods by passing counterfeit checks: first in October and November of 2014, and then again in October and November of 2016.

    1.    *Counts 1-28: 2014 Checks*

On October 2, 2014, the Defendant opened two accounts at Bank of America for a business named "Sovereign Vision Corporation." The Defendant used his driver's license information and named himself as the sole owner of both accounts. The Ohio Secretary of State lists the Defendant as the resident agent and sole incorporator of Sovereign Vision Corporation.

Beginning on October 17, 2014 and continuing through November 21, 2014, twelve counterfeit checks were deposited into the Defendant's Bank of America accounts. The counterfeit checks purported to be from six different business and personal accounts, including a Catholic charity, a towing company, a janitorial services company, a property management

3

company, a nursing home, and an individual from Tennessee. The checks were made payable to "Sovereign Vision Corporation," "SVC," or "Jasuan Mattice." The endorsement section on the back of each check was signed either "Jasuan Mattice" or "J. Mattice." In conducting this activity, Defendant Mattice possessed counterfeited securities, that is, the forged and fraudulent checks used in his scheme and artifice to defraud. Further, Defendant Mattice used the means of identification, including the bank account information and name of a Roland Brown, during and in relation to the felony violation of Bank Fraud as described in Counts 2, 4, 8 and 9 of the Superseding Indictment.

Following an investigation by the FBI, a federal grand jury in the Northern District of Ohio indicted the Defendant on charges of bank fraud, possessing counterfeit securities, and aggravated identity theft. Federal agents arrested the Defendant in October 2016. He was detained at the Cuyahoga County Jail while awaiting trial.

### 2. *Counts 29-44: 2016 Checks*

Between October 28, 2016 and November 1, 2016 while the Defendant was incarcerated at the Cuyahoga County Jail, he and five individuals— Bryan Arnold, Zenobia Hawkins, Reauna Pass, Curtis Hinton, and Joshua Floyd — engaged in a conspiracy to commit a knowingly execute and attempt to execute a scheme and artifice to defraud a federally insured financial institution, and obtain money and property owned and controlled by such financial institution, by means of false and fraudulent pretenses, representations and promises in that the Defendant and others attempted to cash or deposit a series of counterfeit Wells Fargo bank payroll checks from a company called Venture Data, LLC. Venture Data, LLC ("VDL") is a corporation based in Salt Lake City, Utah that operates telephone survey call centers. One of VDL's call centers is located in Kent, Ohio.

Defendant used using another inmate's phone account to make outgoing calls from jail. In those calls, the Defendant instructed Reauna Pass, Brittany McTier, and Curtis Hinton how to forge and present counterfeit checks. He specifically discussed the forged checks from VDL and told his three co-conspirators to have the VDL checks cashed. The co-conspirators reported their progress on the VDL checks to the Defendant on a near-daily basis.  During this time period, Defendant and his co-conspirators cashed and attempted to cash numerous VDL checks as detailed in Counts 29-44 of the Superseding Indictment.

## III. Controlling Law

### A. Bank Fraud – 18 U.S.C. 1344 and 2

1. *Statutory Language:*

18 U.S.C. 1344 provides:

> Whoever, knowingly executes, or attempts to execute, a scheme or artifice, to defraud a financial institution, or to obtain any of the money, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises shall be fined not more than $1,000,000 or imprisoned not more than 30 years or both.

2. *Elements of the Offense*

   a. First, that the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution, to obtain money or other property owned by or in the control of a financial institution by means of false or fraudulent pretenses, representations or promises;

   b. Second, that the scheme included a material misrepresentation or concealment of a material fact;

   c. Third, that the defendant had the intent to defraud; and

   d. Fourth, that the financial institution was federally insured.

B.    <u>Conspiracy to Commit Bank Fraud – 18 U.S.C. 1349</u>

    1.    *Statutory Language*

    18 U.S.C. 1349 provides, in part:

> Any person who attempts or conspires to commit any offense under is chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy. . . .

    2.    *Elements of the Offense*

        a.    First, that two or more persons conspired, or agreed, to commit the crime of bank fraud, and

        b.    Second, that the defendant knowingly and voluntarily joined the conspiracy;

C.    <u>Possessing a Counterfeit Security – 18 U.S.C. 513(a)</u>

    1.    *Statutory Language*

    18 U.S.C. 513(a) provides, in part:

> Whoever makes, utters or possesses a counterfeited security of a State or a political subdivision thereof or of an organization, or whoever makes, utters or possesses a forged security of a State or political subdivision thereof or of an organization, with intent to deceive another person, organization, or government shall be fined under this title or imprisoned for not more than ten years, or both.

    2.    *Elements of the Offense*

        a.    First, that the defendant made [uttered][possessed] a security;

        b.    Second, that the defendant knew that the security was counterfeited [forged];

        c.    Third, that the counterfeited [forged] security was of a State [or political subdivision thereof or of an organization]; and

        d.    Fourth, that the defendant did so with the intent to deceive another person [organization][government].

D.  Aggravated Identity Theft – 18 U.S.C. 1028(a)

   1.  *Statutory Language*

The statute provides, in part:

> (a) Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.
>
> * * *
>
> (c) (5) any provision contained in chapter 63 (relating to mail, bank, and wire fraud);

   2.  *Elements of the Offense*

   a.  First: That the defendant committed the felony violation charged in Counts 2, 4, 8, and 9 (Bank Fraud). The violation charged in Counts 2, 4, 8, and 9 is a felony violation listed in the statute.

   b.  Second: That the defendant knowingly [transferred] [possessed] [used] a means of identification of another person without lawful authority.

   c.  Third: That the defendant knew the means of identification belonged to another person.

   d.  Fourth: That the [transfer] [possession] [use] was during and in relation to the crime charged in Counts 2, 4, 8, and 9.

**IV. Anticipated Legal Issues at Trial**

   A.  Co-Conspirator Hearsay Exception: FRE 801(d)(2)

The government intends to offer out-of-court statements made by the Defendant's co-conspirators during the 2016 conspiracy.

Rule 801 of the Federal Rules of Evidence provides that a statement made "by a coconspirator of a party during and in furtherance of the conspiracy" is not hearsay when offered

7

against that party. A statement meets this hearsay exception if: (1) a conspiracy existed; (2) the defendant against whom the hearsay is offered was a member of the conspiracy; and (3) the hearsay statement was made in the course of and in furtherance of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171 (1987). In making a preliminary determination of whether these elements are met, the trial court may consider all relevant facts, regardless of whether or not those facts are admissible as evidence. *See id.*

      B.      <u>Business Records</u>

The Government intends to admit a number of business records as evidence in this case. Under FRE 803(6), a record of a regularly conducted business activity is not barred by the hearsay rule if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

A business record must be authenticated by a custodian who can attest that the records comply with the requirements of 803(6)(a), (b), and (c). The custodian "need not be in control of or have individual knowledge of the particular corporate records . . ., but need only be familiar with the company's record-keeping practices.'" *United States v. Weinstock*, 153 F.3d 272, 276

(6th Cir. 1998) (*quoting In re Custodian of Records of Varsity Distrib., Inc*., 927 F.2d 244, 248 (6th Cir. 1991)).

Additionally, numerous federal courts have held that a business record may incorporate records or documents created by a third party, provided that the business regularly relied on the accuracy of those third party records or documents. *See, e.g.*, *Fambrough v. Wal-Mart Stores, Inc.*, 611 F. App'x 322, 329 (6th Cir. 2015); *Brawner v. Allstate Idemnity Company*, 591 F.3d 984, 987 (8th Cir. 2010); and *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1342-44 (Fed. Cir. 1999)

C. Self-Authenticating Public Records

The Government intends to prove that the banks involved in this case were federally insured by offering signed certificates from the Federal Deposit Insurance Corporation ("FDIC"). Federal Rule of Evidence 902(1) states that the following documents are self-authenticating:

> **(1) Domestic Public Documents That Are Sealed and Signed.** A document that bears:
>
>> **(A)** a seal purporting to be that of the United States; any state, district, commonwealth, territory, or insular possession of the United States; the former Panama Canal Zone; the Trust Territory of the Pacific Islands; a political subdivision of any of these entities; or a department, agency, or officer of any entity named above; and
>> **(B)** a signature purporting to be an execution or attestation.

Here, the FDIC certificates contain the official FDIC seal as well as the signatures of the Executive Secretary and the Chairman of the Board. As such, they are self-authenticating under Fed. R. Evid. 902(1).

D. Recorded Jail Calls

The government intends to offer recorded phone calls made by the Defendant from the Cuyahoga County Jail. As noted above, the Defendant used another inmate's phone account to call members of the check counterfeiting conspiracy during October and November of 2016.

Federal Rule of Evidence 901 governs the authentication of evidence. It provides a non-exclusive list of ways that a party can authenticate an item of evidence. Two examples from that Rule are relevant in this case:

> (5) Opinion About a Voice. An opinion identifying a person's voice--whether heard firsthand or through mechanical or electronic transmission or recording--based on hearing the voice at any time under circumstances that connect it with the alleged speaker.
>
> * * *
>
> (9) Evidence About a Process or System. Evidence describing a process or system and showing that it produces an accurate result.

Fed. R. Evid. 901

Here, the Government intends to call two witnesses to authenticate the phone calls made by the Defendant from jail. First, the Government will call Sgt. Philip Christopher of the Cuyahoga County Jail to establish that the Cuyahoga County Jail call system accurately records and stores phone calls made by its inmates. Sgt. Christopher will identify approximately ten calls made from an inmate account at Cuyahoga County Jail between October 28, 2016 and November 5, 2016. The Government will then call FBI Special Agent Michael Stark to identify the Defendant's voice on each of the ten calls. Agent Stark will testify that he is familiar with the Defendant's voice, as well as the voices of Reauna Pass, Curtis Hinton, and Brittany McTier.

E. <u>Disruption in the Courtroom</u>

A defendant's presence at a trial is governed by Fed. R. Crim. Proc. 43, which requires his/her presence at the initial appearance, initial arraignment, plea, every trial state (including

jury impanelment and return of the verdict), and sentencing. Fed. R. Crim. Proc. 43(a). This right to be physically present is "root[ed] in both the Due Process Clause and the Confrontation Clause of the Sixth Amendment." *Gray v. Moore*, 520 F.3d 616, 622 (6th Cir. 2008). As a constitutional right, courts are reluctant to find exceptions to the presence requirement.

However, a defendant may constructively waive his right to be present by acting out during the trial. Fed. R. Crim. Proc. 43(c)(1)(C). Under this rule, "[a] defendant who was initially present at trial . . . waives the right to be present . . . when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in conduct that justifies removal from the courtroom." *Id.* The Supreme Court condoned this waiver in *Illinois v. Allen*, holding that "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." 397 U.S. 337, 3434 (1970). The Sixth Circuit likewise adopted this framework in *Gray v. Moore* when it admonished the trial court for not warning the defendant that he might be removed before actually removing him. 520 F.3d at 623.

In *United States v. Clark*, 591 F. App'x 367 (6th Cir. 2014), the Sixth Circuit approved the district court's removal of an unruly defendant after a clear warning. In *Clark*, the defendant repeatedly engaged in disruptive behavior during his own trial. *Id.* at 373. The court warned the defendant three times to behave and then removed him to a remote facility where he could both see and hear the proceedings. *Id.* The district court also invited the defendant to return should he change his mind and decide to "act appropriately in the courtroom." *Id.* at 374. The Sixth Circuit upheld the district court's express findings that the defendant's "noncompliance

11

interfered with its ability to carry on with the trial" and that the defendant waived his right to be present. *Id.*

Although not explicit in *Clark*, the district court appeared to remove the defendant to a location where he could both see and hear the trial via video conferencing. F. App'x at 373-74. While the Sixth Circuit has clearly indicated that video conferencing cannot replace a defendant's physical presence in the courtroom, it appears to have left open an exception for when the defendant is properly excluded under Fed. R. Crim. P. 43(c)(1)(C). *See United States v. Williams*, 641 F.3d 758, 764 n.1 (6th Cir. 2011).

In this case, Mattice has at times behaved disruptively during the proceedings, including speaking out of turn, standing up, raising his voice to the Court and stand-by counsel, ignoring the Court's admonishments, and other such distracting measures. If Mattice chooses to act in such a manner during the trial of this case, the United States requests that the Court to adhere to the procedures set forth in Fed. R. Crim. P. 43 and *Illinois v. Allen*. Specifically, the United States ask this Court to admonish Mattice that such disruptive behavior will not be tolerated, and, should he disregard the Court's instruction and persist in this type of behavior, that the Court will remove him from the courtroom for trial via closed circuit television. The United States also asks the Court to inform Mattice that he may return should he choose to correct his behavior. Such instructions should be given outside of the presence of the jury.

    F.    *Pro Se* Litigant

In *Indiana v. Edwards*, 554 U.S. 164 (2008), the Supreme Court held that the Constitution does not forbid States from insisting upon representation by counsel for those defendants competent enough to stand trial but who nonetheless suffer from mental illness to the point where they are not competent to conduct trial proceedings by themselves. However, the

12

Court declined to set a specific standard for determining competency to proceed *pro se*, instead leaving this determination to the trial judge's discretion. Indeed, "the trial judge, . . . who presided over . . . competency hearings . . . will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Id.* at 177.

Multiple circuits have interpreted *Edwards* to confer discretion on district courts, rather than impose a new duty. *See United States v. Turner*, 644 F.3d 713, 724 (8th Cir. 2011) ("District court judges have discretion to force counsel upon the discrete set of defendants competent to stand trial but incompetent to represent themselves. It does not mandate two separate competency findings for every defendant who seeks to proceed *pro se*."); *United States v. Berry*, 565 F.3d 385, 391 (7th Cir. 2009) ("The Constitution may have allowed the trial judge to block his request to go it alone, but it certainly didn't require it."); *United States v. DeShazar*, 554 F.3d 1281, 1290 (10th Cir. 2009) (finding that while the district court was not compelled to find the defendant competent to waive his right to counsel "simply because the court had found him competent to stand trial, it does not follow that the district court was absolutely prohibited from doing so").

While the Sixth Circuit has not yet addressed this issue, it has acknowledged its interpretation that *Edwards* establishes a higher competency standard for self-representation versus standing trial. *See, e.g., United States v. Ross*, 703 F.3d 856, 869 (6th Cir. 2012) ("The threshold for finding that a defendant may be incompetent to stand trial is lower than the baseline for competency to represent oneself."); *United States v. Back*, 307 F. App'x 867, 878 (6th Cir. 2008) ("*Edwards* indicates that a defendant who proceeds *pro se* may need to meet a higher standard of competency than merely that needed to stand trial.").

13

Questions that are appropriate to the inquiry of a defendant's right to proceed *pro se* during trial include: (1) whether defendant understands the charges against him and the serious penalties he faces if convicted; (2) whether the defendant understands the difficulties of representing himself; (4) whether the defendant understands basic legal principles/concepts and the court system; and (4) whether the defendant understands the availability and purpose of stand-by counsel.  *See Bench Book for U.S. District Court Judges*, Federal Judicial Center, at § 1.02 (March 2013).

Here, no similar concerns appear to apply to Mattice.  On March 31, 2017, the Court inquired of the defendant regarding his desire to represent himself.  At that time, the Court conducted the *pro se* inquiry in accordance with *United States v. McDowell*, 814 F.2d 245 (6th Cir. 1987); *see also Bench Book for U.S. District Court Judges*, Federal Judicial Center, at § 1.02 (March 2013).  This Court then found Mattice "competent and capable to represent himself."  However, in an abundance of caution, the United States requests that immediately prior to trial, the Court again questions Mattice regarding his desire to proceed *pro se*.

## IV.   MISCELLANEOUS TRIAL MATTERS

### A.   Submitting the Indictment to the Jury

In the Sixth Circuit, the trial court is permitted to submit the indictment to the jury so long as the jury is specifically instructed that document is not to be considered as evidence of the Defendant's guilt. *See United States v. Cooper*, 577 F.2d 1079, 1089 (6th Cir. 1978). Given the large number of charges and dates involved in this case, the government requests that the Court submit a copy of the superseding indictment to the jury in order to avoid confusion. The Government has included a proposed jury instruction on the indictment in its previous filing.

### B.   Computer-assisted Presentation of Evidence

The Government intends to present evidence through the Court's electronic presentation system using Trial Director software. With the Court's permission, the government intends first to have the witness identify the evidence to be admitted, allow an opportunity for the Defendant to object, and if admitted, publish the evidence to the jury using the electronic presentation system.

    C.    <u>Witness Sequestration and Presence of Government's Agent at Trial Table</u>

The United States respectfully requests that the Court issue a witness-sequestration order pursuant to Federal Rule of Evidence 615. Pursuant to Rule 615(b), the Government designates the case agent, FBI Special Agent Michael Stark, as its representative. The Government respectfully requests that the Court allow Special Agent Stark to sit with the Government's attorneys at the trial table.

    D.    <u>Length of Trial</u>

The Government expects its case-in-chief will last approximately 2 business days. The Government will submit a list of witness, comprised of approximately 20 individuals, prior to start of the trial.

    E.    <u>Stipulations</u>

At this time, there are no stipulations between the Government and the Defendant.

    F.    <u>Jury Instructions</u>

Due to its length, the Government has prepared its proposed jury instructions as a separate document filed with the Court as Docket # 116.

    G.    <u>*Jencks* Materials</u>

To date, the United States has already produced considerable *Jencks* materials for its witnesses to Defendant, including numerous FBI Memoranda of Interviews with potential witnesses, and will continue to abide by its obligations in a timely manner.

CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January 2018 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Defendant Jasaun R. Mattice will receive notice by regular U.S. Mail at the following address;

Jasaun R. Mattice
NE OH Correctional Center
2240 Hubbard Road
Youngstown, OH 44505
Reg. No. 64372060

All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Om M. Kakani
Om M. Kakani
Assistant U.S. Attorney